Thank you for the opportunity to speak before the Court under these circumstances. This is an appeal from an award of attorneys to use from the third of three rounds of class action settlements. The underlying litigation is antitrust pricing conspiracy involving optical disk drives. And this particular appeal involves a $5 million fee, which comes from the third round of settlements, $25 million common fund. And it represents a 20% fee from that amount and then also based on a $2 million load star multiplier, which produces a 2.5 load star multiplier. But it's part of an overall $52 million fee and expense award from three rounds of settlements. That's more than twice what Huggins Berman bid to become class counsel. Had the courts adhered to the bid, it would have produced a $25 million fee with no expenses. Now this appeal concerns just the third round, but it's important to give for Mr. Erwin's appeal to give the court some context. In 2010, Judge Walker appointed Huggins Berman class counsel with a fee bid that would have produced an aggregate 12.6% fee. In 2010, Judge Walker retired and Judge Seaborg took over the case. Then in 2016, the parties breached the first round of settlements and class counsel moved for attorney fees without informing Judge Seaborg in the motion about the bid. Erwin objected to that round of settlements and the subsequent two rounds of settlements and called for the bid that Huggins Berman submitted under seal to be unsealed and to be given effect. Unfortunately, Judge Seaborg didn't get to the bid until round three. And that's clear- Excuse me. Right there. Can I get a question? Because I think this chronology is important, at least it is to me. I think that's right. The first two motions didn't say anything really about the fee bid, but in response to the objection, I believe class counsel did say our fee would have been X% under the original bid. And the district court knew that at the time of the first two awards, didn't he? I think his order says as much. The second, definitely for the second order, Huggins Berman began discussing the bid. And I think it may have, to be honest with you, I can't, from the first round, I can't remember if it came out in response to the objections or if it came out in round two. But either way, I think the record is clear that Judge Seaborg did not actually review all the details of the bid. Huggins Berman gave their version of what it may have said. But as he said, he didn't plumb the depths of the bid. He didn't actually look at the bid until round three. Okay. I have a related question, and it's a little cumbersome long distance. So it will save me one more interruption if I ask you now. Are you taking the position that Judge Seaborg was bound by the original bid? We're taking the position, so I don't think, I think, number one, I'm taking the position that Judge Seaborg had to consider the bid as part of the Biscayne analysis. In the first two rounds, he didn't. And then I'm taking for the third order, he had to at least articulate his analysis for declining to apply the bid. I think when a firm bids for class council status in general, it should be given effect to the benefit of the class members. Judge Walker has several opinions discussing that it's a negotiation process that's meant to save the class money. And so I don't know if we need a bright line rule. Certainly in this case, I don't think we do, because at least after the first two orders, the bid wasn't reviewed. Nevertheless, the court concluded that it need not be applied. So I don't think the court needs to arrive at that bright line rule. And so I don't know if I answered your question. I think you did answer my question. Thank you. Okay. Thank you. So, as I said, we believe the first two orders have to be reversed because the bid was found inapplicable without the judge having read it. The round three order, we believe, should be reversed because, as I said, the court really engaged in no analysis. Judge Seaborg did two things. First, he incorporated his prior two orders by reference. But as we have already discussed, he had not actually reviewed the bid when he articulated the analysis in those first two orders. Second, it's clear he hadn't looked at the bid because when it was ultimately, at least one page of it was unsealed, it talks about adjudication through certification. So it expressly contemplates a contested certification motion, which was the primary basis that Judge Seaborg gave for Hoggins-Berman not being able to foresee a variety of imponderables that would arise during the litigation. And then, additionally, the other point that the judge discusses, he incorporates his prior analysis by reference. And then there's other discussion of the bid in the third round fee order as he says he could have awarded more if there were no bid. But that's nothing more than a conclusion. That's no analysis as to why a firm can bid an approximate $25 million aggregate fee with no cost and then turn around and collect $52 million in fees and expenses. It should have been addressed under Vizcaíno. The court should have contemplated what market rate is in light of that ex-ante bid and also giving account to the fact that one of the three firms actually bid below Hoggins-Berman. The other point I wanted to make, and then I'll turn it over to opposing counsel, is there's no reason at this point, at this juncture, to keep the bid under seal. There's no defendant that's really before the court at this point. Everyone's been adjudicated. Either everyone's settled or the summary judgment was just affirmed by this court. And on that point, class counsel wanted both ways. On the one hand, they argue the court was free to disregard the bid, and there's nothing relevant in the bid that took place 10 years ago. On the other hand, they're saying, no, let's keep it. We have to keep it hidden, under seal from the class, because someone might theoretically take that information and figure out how Hoggins-Berman values the case. So we don't believe there's any reason to keep the bid under seal. So at the very least, that had to be disclosed to the class. Unless there are any questions. I'm happy to take any questions. Yeah, I have no questions, counsel. Unless Judge Christin or Judge Lasek, too. Now you can reserve the rest of your time for rebuttal. Can Ms. Scarlett? I may please support Janice Scarlett from Hoggins-Berman for the plaintiff appellee indirect purchaser class. Can your honors hear me? Yes. Yes. Fantastic. Thank you. We're here before this court on the appeal of an award of attorney's fees by a district court judge who oversaw this litigation, which was eight years pending. This court has repeatedly instructed district courts to look at the totality of the circumstances in awarding attorney's fees, and that's precisely what this district court did here. He was not a court unfamiliar with the ups and the downs of the case. As he said at the first round of motions for approval of settlements, I think you've done excellent work in this case. I think it's been extraordinarily difficult, and I sat with you through the highs and the lows. I know what work you've done, and that's precisely the point here. This district court oversaw dozens of hearings of discovery disputes. It oversaw two rounds of motions for class certification and an extraordinary number of motions for summary judgment. A different judge at the outset of the case, now retired, Judge Walker, oversaw the selection of lead counsel. Judge Walker then retired, and the case went to Judge Seaborg. But in awarding lead counsel, Judge Walker never held, never ruled that he saw that Hoggins-Berman was bound by a single data point alone, that fee grid. Instead, it was an interim order of the court that it had the inherent authority to modify at any time under Rule 54B, which he had as one data point that he would have considered at the end of the case. And that point was considered by Judge Seaborg. In Excerpt of Record 902, the first fee order, he ruled the original fee structure does not apply. In the second round of fees at ER 422, he ruled again the guidelines submitted at the outset of the case never limited the discretion of the court. And on the third fee order, the one at issue today, at ER 17, he held the fact that Hoggins-Berman bid for the right to represent the IPPs with a proposed fee structure that would have resulted in a lower fee is not dispositive. And the district court went to extraordinary lengths to review the factors that this court and Rule 23 instructs the court to consider, the results achieved in the case, whether the case was risky, the benefits beyond the cash settlement fund, the market rate for antitrust cases, and the burdens experienced in litigation, and whether the case was handled on a contingency basis. Counsel, can I ask there, we have not said, because Vizcano didn't have an occasion to consider it because there wasn't a fee bid in that case. So this would be an opportunity for us to provide more guidance about whether or not the fee bid should be considered expressly as a Vizcano factor. Yes, Your Honor. And to the extent that this court holds that, it's certainly a standard that the district court met. That's a different answer. I'm asking a different question. Counsel, could you answer the question I asked, please? Whether or not this would be the first occasion for a court to instruct? My question is, I didn't ask it very well, I guess. My apologies. Should a fee bid be a Vizcano factor that must be considered? To the extent that there is one in the record and there was a request for bids made by the court, I think that it would be fair for this court to require the district's court to consider that at the time under the totality of the circumstances test. Okay. So the difficulty is that – oh, forgive me. Go ahead, Judge Lasnik. Just following up on that, Judge Seaborg apparently could locate it, at least for the first two. And wasn't it incumbent on Hoggins and Berman to provide the judge with that so he could consider it? Your Honor, we thought at the time that he did have access to it. It was submitted to the court. We provided courtesy coppers in chambers at the time of the application to Judge Walker, and from our perspective looking at the ECF docket, it was available as an entry. So to the extent that he did not have access to it previously, we were unaware of that. And, of course, when he did ask for a copy of it, we provided to him I think within 24 hours of the request. I think it took six months. I think it took six months to get it filed according to the record that we have.  We can look back, but, Your Honor, I was the one that argued at the third hearing on request for fees, and the court requested us to provide it. And it's my recollection it went fairly quickly to the court. But setting that aside. You know, it's usually sort of the tip of the iceberg. Maybe there was a courtesy copy delivered in person in chambers. That could very well be. You have to appreciate the vantage point that we have. And I have spent some time, I spent a lot of time with this case. And I can well appreciate from your perspective submitting the first two motions for approval of fees. It would not have been, perhaps it would have been reasonable to expect that the court would have been aware of the bids because they were filed. They're part of the docket six years earlier, but they're part of the docket. And yet, you know, courts do accept filings under seal in different ways. And it strikes me that this case is old enough. It may have really been the old school paper version in a manila envelope delivered. You know, it might have been that. Because I think the record is quite clear, without casting aspersions, that the judge at the first two hearings, and he says as much at the third, that he can't find it. So is that, I guess it's a long way of me asking, is it your position that that's the first point at which your firm was aware he didn't have it? Your Honor, that would be the first point. We were aware he did not have the actual full grid itself, the full submission. But there were disclosures in the record that gave him the information that he needed to consider it. Well, I just said as much in response to one of counsel's questions. I think it's clear. But the first two hearings that in response to objectors, your firm came forward and said our fee would have been, you know, percentage X or percentage Y. Not the grid, but just the, you know, sort of bottom line percentage. There is a little bit of a concern I have about your firm applying the grid differently in various representations that it's made. Not hugely differently, but there are examples where because of the text above the grid, the firm took components of settlements and plugged them in, you know, and they sort of seemed to average. And there's at least one other example where the firm took the lump sum and plugged it into the grid, hence and then reported different numbers out. Are you aware of those discrepancies? So I looked through the record to ensure that we had accurately reflected what the grid was, and I believe at all times we did. How we intended for it to be applied was that the percentage would be applied per settlement. So if I could just walk you through a couple numbers just to show you. So for example, HLDS, that settlement was for $73 million, and given the stage of it under the grid, it would have been a 13% fee. The NEC settlement was $6.5 million. Under the grid, that would have been a 14% fee. Sony was $28.5 million, and that would have been a 13.25% fee. And Panasonic at $16.5 million would have been a 14% fee. When you take all of those numbers, so you'd add the percentage of HLDS, the percentage of NEC, we came up with a total number of $16.4 million, and that applied divided by the $124.5 million in settlements would have equated to 13.2%. So that's how we got the numbers, and that's true. So that was disclosed at supplemental. I'm familiar with that. There is at least one occasion where it was done differently, and again, this is not to cast aspersions. I was just asking whether or not you're aware of that. I think there's at least one. I don't think it's a huge difference, and I can appreciate how it may have happened. I do think it's a bit of a granular point that I'm making. I am just mindful, as you are, that at this point, you know, we have a lot of case law saying at this point the relationship is adversarial, the court has a fiduciary duty, and this is peculiar here because the bid was still under seal. So it does put the objectors in a really one-down, you know, tough position to be responding here. So hence my question. I understood, Your Honor, and just to point out that at the award, the $5 million reward that's before the court right now, the court did have the opportunity to evaluate more in its totality, and it had warned counsel that it was going to do this. If you look at the first round of fees at Excerptive Record 893, he warned counsel he would make a final determination of the total fees to be awarded in light of the entire record of the conclusion of the case. And in paraphrasing that... But counsel, at that point, again, your time is ticking, so I know I keep interrupting you, but when you get to this point, what would be most helpful to me is if you could discuss expenses because of the third round. Of course, he didn't make an expense award, so that's where your argument would be most helpful. Absolutely, Your Honor. Judge Gould, before you answer that, I wanted to ask you to be sure at some point in your argument you addressed the issue raised by Mr. Klor as to whether at this point in time the initial bid document should be made public record. Yes, Your Honor. Addressing first the point regarding costs and expenses, the bid itself on Excerptive Record 31, which is public, says that the firm's proposal included costs. There is a legal distinction for us between costs and expenses. At the end of any case where we are victorious, there's a taxation of costs against the defendants, and this is a very specific number of enumerated items that we're allowed to have a taxation of costs. That is separate than the expenses that were requested from the court in the rounds, the first, the second, and the third rounds. In the third round, the court… This is Judge Glasnick, and I think Judge Walker understood costs to be expenses. I, as a district court, reviewing that would have thought costs were expenses. You know, the taxable cost is a meager amount of money, but the expenses is something significant. That is an area where I am casting aspersions on Hoggins and Berman to say that limiting that, because as you saw with Judge Seaborg, he didn't… either when he didn't grant… I don't understand how the firm could take the position that we're only talking about taxable costs. Your Honor, and if Judge Seaborg wanted to change the prior two orders, he could have said in an indicative ruling that he intended to take away the expenses from the prior two rounds, but that's not what he did. He, in fact, struck the $650,000 in expenses that were requested, but allowed the attorney's fees. Right, and he might have thought that you did such a good job that you were entitled to that money, even if it wasn't called expenses or costs. But, you know, we might need a little more clarification from Judge Seaborg about what he did in that area. Well, he certainly made his findings in the ruling that it was his intention to not allow those third rounds of expenses, but I think that does go to the point that incorporating the prior orders and looking at the totality of the case, that he felt that looking from his vantage point, considering all the factors that were in front of him, that he had sufficient information to award the fees and expenses that he did. And just while I have time getting to Judge Gould's question whether or not at this point it's true that the entire bid should be unsealed, we certainly have no objection to that, given that at the time that we argued this to the court, there were still two remaining defendants. There were Ben Q. and the Quanta defendants, where we argued summary judgment before this court, and we've lost. And so the case in its entirety is over. But I would just say this. The remaining part of that memorandum that was submitted to the court largely goes towards a review of the potential scope of damages and antitrust injury, and the part that relates to the grid, ER-31, is now public and able to be seen. And so to the extent the rest is unsealed, I mean I think it was relevant to the defendants that were remaining in the case, but not as much so for the class members to assess the bid made by Huttlesboro. The other thing the full bid does is it does shed considerable light on the basis for the thinking behind the offer to absorb costs by citing Judge Walker's earlier decisions. You're correct, Your Honor, and Judge Walker himself, I think his opinions on auctions evolved over time. It's not that Judge Walker seemed to have one position  I think Judge Walker, those opinions that he did look at that were reviewed by us, evolved over time and I think took into account the individual circumstances of any case. But the point is, the one you're kind of sidestepping I think, the point is what was meant at the time, what offer was made, not whether it's binding, but it really goes to Judge Lasnik's point about whether HB offered to absorb expenses. And it seems to me that just for your edification, it seems to me that the case law cited there in the bid is illuminating on that point because I think both district judges, well I know they did, they came to the same conclusion that we're discussing now about expenses. Understood, Your Honor. And if that is the case, then there is the possibility for this court to remand for further findings, but even that being so, this court knew the work the council had done and it was the tail end of a long, long road. And we believe there was no clear error in the judgment of fees awarded. I think my time's up. Thank you very much. Thank you, counsel, for your argument. Mr. Klor, you have some rebuttal time if you want to use. Just a few minutes, judges, and of course I'll take any questions. I don't think you can say the judge looked at the totality of circumstances as if the bid that used her class counsel status was not reviewed until round three, which I'll respectfully disagree with my colleague. I think it was discussed in an argument that what we discussed in both of our arguments, I guess we discussed the representations or the disclosures that the firm, Huggins Furman, made to the judge about the bid and about the percentages. And I think, number one, there's well-established jurisprudence from this court that class members aren't required to rest on the assurances of class counsel, particularly at the fee-setting stage when there's inherent conflicts between the class and their attorneys. And then further, to the extent there were representations made about the percentage that would be produced by application of the bid, I don't know that there was a full disclosure about the bases or the conditions under which the bid would be applicable and there weren't enough representations before the court for it to conclude that it didn't apply without at least taking a look firsthand at the bid. Counsel, this is Judge Slastik. If the case had proceeded for five or six years in front of Judge Walker and Judge Seaborg had come in at the very tail end to deal with fee requests, that would be one situation. But Judge Seaborg saw this virtually from cradle to grave, and he's an experienced and superb trial judge. He's entitled to come to a conclusion that having experienced all this litigation and seen the performance and seen the results, that Hoggins and Furman were entitled to more than the bid, aren't they? Isn't he entitled to that? I think he is if he reviews the bid from the first two orders at the time he issues the orders, and he didn't do that in this case. That's what you're really asking for, send it back, have him look at the whole bid, and we'll abide by his decision. I would think we're asking for the court to unseal the bid, send it back, allow class members an opportunity to consider the fee request in the context of what was submitted to Judge Walker and go from there. Unless there are any questions. Judge Gould, I have no questions. Does Judge Christin or Judge Lesnik? No, thank you both for tolerating my interruption. We want to thank both Mr. Clore and Ms. Scarlett for their excellent arguments, and these are especially extra trying circumstances. The full panel appreciates your help for us and say thanks again. I can't commend you both for traveling because you didn't travel, but I'm going to commend you for helping us out with your very fine arguments. The case of Irwin v. Samsung Electronics, Company Limited, shall now be submitted. Thank you, Your Honors. The court will adjourn until afternoon. We have a different panel. That means Judge Lesnik gets to go fishing if he wants to. Walk around Green Lake again, yes. He has to stay six feet away from all the fish. Absolutely. Okay, well, thank you all very much. Thank you.
judges: Gould, Christen, Lasnik